THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* GEORGE H. LEWIS, Appellant.

Court of Special Sessions of the City of New York, Appellate Part, First Department, October 23, 1945.

*Herman S. Wolfman* for appellant.

*Samuel Morgenroth, amicus curiæ.*

*Ignatius M. Wilkinson, Corporation Counsel (Charles C. Weinstein* and *Sylvan H. Elias* of counsel), for respondent.

*Samuel Mermin, George Moncharsh, David London, Werner Ilsen* and *John D. Masterton (Isaac D. Sorgen* of counsel), for Chester Bowles as Administrator of the Office of Price Administration, *amicus curiæ.*

*Per Curiam.* The sole issue on this appeal is the constitutionality of section U41–5.0 of title U of chapter 41 of the New York City Administrative Code, also known as Local Law No. 35, enacted this year by the Council and Board of Estimate of the City of New York, and duly approved by the Mayor. On the trial it was conceded that defendant, a wholesaler in poultry, sold to a specified retailer, a certain quantity of chickens above the ceiling price established by the Office of Price Administration, in violation of said section.

Said Local Law (§ 2) by its terms is applicable to wholesalers, jobbers, manufacturers, distributors and middlemen only, and in brief provides that it shall be unlawful for such persons to sell or buy any commodity or service for which a maximum price has been prescribed by the Federal Office of Price Administration, in excess of the maximum price prescribed by the applicable regulation or price schedule of such Federal agency. The penalty for a violation is fixed at a fine not exceeding the sum of $500 or to imprisonment for a term not to exceed ninety days, or both, for each such violation. The act further provides that its provisions shall remain in force and effect as long as the acts of the Congress of the United States, under the authority of which such price regulations, price schedules and orders and rationing orders are issued, shall remain in force and effect.

The public considerations which led to the enactment of Local Law No. 35, as stated in section 1 thereof, are: The necessity of protecting the health, safety and general welfare of the inhabitants of the city of New York by a proper allocation of commodities needed for the effective prosecution of the war, the defense of the United States and for civilian supply and the stabilization of commodity prices, the serious effect on the health, safety and welfare of the inhabitants of such city likely to result from the establishment and continuance of black market practices, the enactment of legislation by Congress which through the Office of Price Administration and other agencies has issued regulations and price schedules designed to effect equitable distribution of commodities and stabilization of prices, and finally the declared policy of the City of New York, in order to assure fair

dealing and the prevention and elimination of black markets, to co-operate with the price and rationing programs of the government of the United States.

In his attack upon the constitutionality of the law, appellant has focused his arguments under two main headings: (1) That the City of New York does not possess the power to enact the local law in question; and (2) that if it does possess such power, the law is invalid because it is inconsistent with the New York State War Emergency Act (L. 1942, ch. 445, as amd.) dealing with the same subject. The inconsistencies claimed by appellant are that the local law has increased the penalty for a violation of the Federal Emergency Price Control Act of 1942 (U. S. Code, tit. 50, Appendix, § 901 *et seq.*) over that provided for in the New York State War Emergency Act; that the local law is not directed against the same persons or classes of persons comprehended in the State statute; that the New York State War Emergency Act in terms requires proof of willfulness on the part of the offender, whereas, the local law does not; and finally that violation of the local law is in effect a misdemeanor, whereas a violation of the State act has been denominated an infraction only.

Respondent herein and the Administrator of the Office of Price Administration appearing *amicus curiæ* contend: (1) That the legislative body of the City of New York does possess the power to enact the disputed law by virtue of the provisions of the New York City Charter (1938) and the City Home Rule Law, (2) that the local law is a valid exercise of the police power and emergency power of the Home Rule Law, (3) that such differences as exist between the local law and the State law are not inconsistencies rendering the local law invalid and (4) that the challenged law is reasonably adapted to meet the emergency conditions which it was designed to alleviate and correct.

In January, 1942, Congress passed the Emergency Price Control Act as an emergency war measure, and through the Office of Price Administration set up a system for the control of the rationing and pricing of commodities. Said act provided for the imposition of a penalty up to treble the overcharges or $50, whichever is greater, for each violation, a criminal penalty not exceeding $5,000 and one year's imprisonment for each willful violation, and also for license suspension in the case of repeated violations. (Act, § 205, subds. [b], [e], [f]; U. S. Code, tit. 50, Appendix, § 925, subds., [b], [e], [f].)

This Federal price control system became the law of the land applying both to interstate and intrastate commerce. It did not

provide for similar action by the respective States nor did it exclude such action. In fact many States do not have a rationing and price control law.

In the year 1942, subsequent to the passage of the Federal Emergency Price Control Act, the State of New York passed the New York State War Emergency Act for the purpose of implementing the enforcement of the Federal price control regulations. By the provisions of the State act there was set up the State War Council which was given the power to adopt rules and issue orders with respect to the enforcement of the rationing, freezing or other orders or regulations established by the Office of Price Administration pursuant to the Federal act. By resolution on April 28, 1943, the State War Council, under the authority of the State act, for the purpose of enforcement, adopted and promulgated in the State of New York all regulations and orders established by the Federal Price Administrator pursuant to the Emergency Price Control Act of 1942. In such resolution it was declared that a violation of any such regulations or orders should constitute an infraction. The State act made infractions punishable by a fine not exceeding $25 or five days imprisonment or both such fine and imprisonment.

This State legislation was upheld by the Court of Appeals. (*People* v. *Mailman,* 182 Misc. 870, affd. 293 N. Y. 887.)

In this situation the legislative body of the City of New York enacted Local Law No. 35 with respect to the enforcement of the prohibitions which already applied to the city's inhabitants by virtue of the Federal and State acts. No new prohibitions were created. However, the penalty for a violation was increased to the extent hereinbefore set forth.

The problem dealt with by the statute in question has been universally recognized. The danger of inflation menaces every country in the world. Its destructive power is more difficult to deal with than with marching armies. A nation may resist an enemy bravely and then permit itself in the hour of victory to be ruined by the greed of the few or the helplessness or indifference of government officials, to the peril of economic disaster that follows abnormal increases in the prices of the necessities of life. The Congress of the United States and the Legislature of the State of New York have passed statutes to combat the dangers and have put the power of the criminal law of both State and Nation to the task of maintaining and upholding the price structure of the country. The broad question before us is whether the City of New York has the power to join the battle by adopting a local law for the purpose of upholding the same price

structure that is the basis for the Federal and State statutes. It is probably correct to say that one half of the population of the United States resides in its cities. It is of the utmost importance that the municipalities should align themselves, wherever possible, within the limitations of their powers, with the Federal and State Governments in meeting the emergency which confronts the whole Nation.

It is probably correct to assume that in normal times such a broad system of rationing and price control embodied in the Federal Emergency Price Control Act and the implementing of the New York State War Emergency Act would not meet with the approval of the courts. It was the emergency which those laws were designed to meet which called forth the latent governmental power to provide for the general welfare. (*People ex rel. Durham R. Corp.* v. *La Fetra*, 230 N. Y. 429, 443, appeal dismissed 257 U. S. 665.) The same emergency confronted the local legislative body which met it by the enactment now under attack upon this appeal. The officials of the City of New York after two years' experience with the New York State War Emergency Act determined that its penalties were not sufficient to restrain the myriad of violators engaged in the complex commerce of the greatest city in the country. The crowded calendars of the Magistrates' Courts, the repeated violations by the same individuals, with thousands of complaints by consumers, caused the city officials to invoke their own powers to supplement and strengthen the endeavors of the officials of the State and Nation to hold the line against inflation and protect our economic structure.

Local Law No. 35 has simply added a municipal sanction to the Federal and State sanctions enforcing legal requirements already existing within the State. In our opinion it is a proper and valid exercise of police power residing in the municipality.

The Supreme Court of the State of Michigan in an exhaustive opinion upheld the validity of a Detroit ordinance which is similar to the local law under discussion. (*People* v. *Sell,* 310 Mich. 305, 317.) The court pointed out that the ordinance was an '' emergency measure to * * * protect the national welfare and the welfare of the city's inhabitants '' and a '' homefront attack upon the common enemies of profiteering and inflation.'' The safeguarding of the economic structure on which the public depends was deemed to be a proper police power objective served by the ordinance.

Express authority for the enactment of Local Law No. 35 is found, we think, in the New York City Charter (1938). By

section 21 thereof the City Council is vested with the legislative power of the city. By section 27 the council is given the power to " * * * adopt local laws as to it may seem meet * * * which are not inconsistent with the provisions of this charter, or with the constitution or laws of the United States or of this state, for the good rule and government of the city; for the order, protection and government of persons and property; for the preservation of the public health, comfort, peace and prosperity of the city and its inhabitants * * *."

This is a broad grant of power to the local legislative body. Unless some paramount provision of law forbids it, Local Law No. 35 is clearly within its general provisions and authority.

The applicable provisions of the City Home Rule Law appear in section 11 thereof reading as follows: " *Power of cities to adopt and amend local laws.* 1. Subject to the restrictions provided in this chapter, the local legislative body of a city shall have power to adopt and amend (a) local laws in relation to the property, affairs or government of the city * * *. Such local laws may change or supersede any provision of an act of the legislature theretofore enacted which provision does not in terms and in effect apply alike to all cities. The enumeration of powers in this subdivision is not intended to imply that any of such powers is not included within the power of a city to adopt and amend local laws in relation to its property, affairs and government."

We find nothing in the City Home Rule Law which adversely affects the validity of Local Law No. 35. In the light of the emergency it was designed to meet, we are of the opinion that the local law deals with the property, affairs and government of the City of New York.

We find no inconsistency between Local Law No. 35 and the New York State War Emergency Act because of the increase of penalty contained in the former. The State Legislature undoubtedly knew that conditions vary greatly within the State, and in the absence of an expressed pre-emption of the field must have intended to permit more stringent enforcement in particular congested areas of the State by home-rule cities' exercising their delegated and police powers.

There is ample judicial authority which holds that an act may be made a penal offense under State statutes and that further and different penalties may be imposed for its commission by ordinance. (*Rogers* v. *Jones,* 1 Wend. 237; *Wood* v. *City of Brooklyn,* 14 Barb. 425; *City of Brooklyn* v. *Toynbee,* 31 Barb. 282; *City of New York* v. *Marco,* 58 Misc. 225; *People* v. *Stewart,*

183 Misc. 212; *People* v. *Fenton*, 144 Misc. 710; 3 McQuillin on Municipal Corporations [2d ed. rev.], § 924; 37 Am. Jur., Municipal Corporations, § 166, pp. 791–793; 1 Cooley on Constitutional Limitations [8th ed.], p. 414; *Rossberg* v. *State*, 111 Md. 394.)

The State Legislature undoubtedly passed the State War Emergency Act under the assumption that Congress had not exclusively occupied the field or established the exclusive penalties for price and rationing violations. The penalties provided in the Federal and State acts are different. The Court of Appeals in the case of *People* v. *Mailman* (293 N. Y. 887, *supra*) found this no obstacle in sustaining the validity of the State act. By analogy it would seem to follow that Local Law No. 35 dealing with the same subject matter is not inconsistent or in conflict with the State law because of the difference in penalties. The Detroit ordinance in the Michigan case (*People* v. *Sell*, 310 Mich. 305, *supra*), contains the same penalty as found in the New York City local law. The State of Michigan has no State enforcement act. Although the penalty in the city ordinance differed from the penalties in the Federal act the conviction was sustained.

Appellant claims that the State law prescribes a penalty for any violator of the law, whereas Local Law No. 35 limits the penalty to those violators who are actually engaged in business as retailers or wholesalers. Local Law No. 35 applies to manufacturers, wholesalers, jobbers, distributors and middlemen as sellers or as commercial purchasers. When it is considered together with Local Law No. 34 (Administrative Code of the City of New York, § U41-4.0), which deals with retailers, all sellers and commercial purchasers are covered. An examination of the New York State War Emergency Act and the State War Council resolution thereunder, and the pertinent Federal price regulations discloses that the same coverage is provided for therein.

The contention is also made that subdivision 6 of section 101 of the New York State War Emergency Act penalizes only willful violations and that because the local law does not require proof of willfulness it is inconsistent with the State act and therefore invalid. Although it is not free from doubt, our interpretation of subdivision 6 of section 101 is that willfulness is essential only in those instances where the State War Council has failed to declare an offense as either a misdemeanor or an infraction. The council, in its resolution of April 28, 1943, has declared that violations of the regulations of the Federal Price Administrator shall be deemed infractions.

Even if willfulness were a requirement under the State act there is authority which holds that this does not constitute an inconsistency between a local ordinance and a State act. (*People* v. *Steinhardt,* 215 App. Div. 724, affd. 245 N. Y. 553. See, also, *Rossberg* v. *State,* 111 Md. 394, *supra; Gilbert* v. *Minnesota,* 254 U. S. 325, 340, 341.)

The contention that a violation of the local law is a misdemeanor and therefore inconsistent with the State act because a violation under the latter act is an infraction only, is without merit. The local law does not declare a violation of its provisions to be a misdemeanor. This omission is well-nigh determinative. (*People* v. *Lookstein,* 78 Misc. 306.) Nor does the extent of the punishment by imprisonment suffice to characterize a violation as a misdemeanor since it is considerably less than that generally prescribed in the case of a misdemeanor. Numerous instances abound in the law where offenses not of the grade of misdemeanor entail comparable and even greater punishment.

In view of all of the foregoing, it is our conclusion that Local Law No. 35 is constitutional. Accordingly, the conviction is affirmed.

BAYES, Ch. J., DE LUCA and OLIVER, JJ., concur.